**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**JAIME ELISEO SANTACRUZ MOLINA,**

      **Petitioner,**

      **v.**                           **Civil Action No. 3:26cv681**

**NEY HIDALGO, *et al.,***

      **Respondents.**

**<u>MEMORANDUM OPINION</u>**

Jaime Eliseo Santacruz Molina ("Petitioner"), proceeding *pro se*, filed this Petition for a

Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition," ECF No. 1). Petitioner

challenges his detention by Immigration and Customs Enforcement ("ICE") and seeks his release

from custody or in the alternative, for the Court to order a bond hearing. (ECF No. 1, at 8.)[1] For

the reasons articulated below, the Court will grant the Petition to the extent that it will order

Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a).

**<u>I. Factual and Procedural Background</u>**

**A.    <u>Factual Background</u>[2]**

The Petition contains almost no factual information about Petitioner's circumstances.

Petitioner was in the United States and was apparently not admitted or paroled. Petitioner was

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotation from Petitioner's submissions.

[2] As discussed below, the Court proceeds by dispelling with additional briefing and incorporating Respondents' filings in this Court's decision in *Duarte Escobar v. Perry*, 3:25-cv-758 (MHL) (E.D. Va. 2025). Respondents have recently represented to the Court that "the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in *Duarte Escobar*." (ECF No. 5, at 1.) Accordingly, the Court's recitation of the factual background relies on the facts as alleged in the Petition.

taken into immigration custody on May 20, 2026 and he notes that his immigration case is pending. (ECF No. 1, at 5.)

### B.        Procedural Background

On July 16, 2026, the Court received the instant Petition. (ECF No. 1.) On July 21, 2026, the Court ordered Respondents to file a notice indicating whether the factual and legal issues presented in the Petition differ in any material fashion from those presented in *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va. 2025). (ECF No. 4.) The Court further ordered that, if Respondents indicated that the factual and legal issues presented in the Petition do not differ in any material fashion from those presented in *Duarte Escobar*, "each of the substantive filings in [*Duarte Escobar* would] be incorporated into this habeas proceeding, and this Court [would] issue a ruling without further filings from the parties." (ECF No. 4, at 1–2.)

On July 28, 2026, Respondents filed a Notice in response to the Court's July 21, 2026 Order. (ECF No. 6.) In the Notice, Respondents "submit that the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in *Duarte Escobar*[.]" (ECF No. 5, at 1.) "[C]onsistent with [the Court's] recent order," Respondents contend that "this Court should incorporate the filings in *Duarte Escobar* into the record of this habeas action." (ECF No. 5, at 1.)

The Court incorporates the parties' merits briefing in *Duarte Escobar* into the record. *See Duarte Escobar*, No. 3:25-cv-758 (MHL), ECF Nos. 16, 18, 19, 20 (E.D. Va. 2025).

## II. Standard of Review

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III. Analysis

The central question posed in the Petition is whether Petitioner is entitled to a bond

hearing under 8 U.S.C. § 1226(a)[3] or whether he is subject to the mandatory detention provision

of 8 U.S.C. § 1225(b)(2)(A).[4]

_____

[3] 8 U.S.C. § 1226 provides, in relevant part:

(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

    (1) may continue to detain the arrested alien; and

    (2) may release the alien on—

        (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

        (B) conditional parole.

8 U.S.C. § 1226(a)(1)–(2).

[4] 8 U.S.C. § 1225 provides, in pertinent part:

(b) Inspection of applicants for admission

    (2) Inspection of other aliens

        (A) In general

        Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

In opposition, Respondents rely on their arguments incorporated by this Court from

*Duarte Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va. 2025).[5] Here, as in *Duarte Escobar*,

---

On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Soto v. Soto*, 807 F. Supp. 3d 397, 401 (D.N.J. 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

[5] Respondents' arguments have also been raised and decided throughout the country. The vast majority of courts addressing this issue, including the United States Courts of Appeals for the Second, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits, have concluded that 8 U.S.C. § 1226(a) pertains, meaning petitioners like Mr. Martinez should receive a bond hearing. *See Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Cirrus Rojas v. Olson*, —F.4th—, 2026 WL 2198315 (7th Cir. 2026); *Rodriguez Vazquez v. Bostock*, —F.4th—, 2026 WL 2196424 (9th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Detention Cntr. Miami*, 175 F.4th 1258 (11th Cir. 2026); *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *4–5 (E.D. Pa. Nov. 18, 2025) (noting that "of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here").

In addition, dozens of courts in the Eastern District of Virginia (including this Court) have rejected Respondents' position on eminently sound bases. *See Velasquez v. Noem*, No. 3:25-cv-998 (MHL), 2026 WL 279226, at *4 n.14 (E.D. Va. Feb. 3, 2026) (collecting thirty cases rejecting Respondents' argument in this District alone).

A small minority of district courts have accepted Respondents' arguments. *See, e.g.*, *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1140–41 (S.D. Cal. 2025); *Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132, 1140–43 (D. Neb. 2025). These decisions do not alter this Court's determination.

Recently, the United States Courts of Appeals for the Fifth Circuit and Eighth Circuit joined these courts. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128, 1132–38 (8th Cir. 2026). These decisions are not binding here. *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 260 (4th Cir. 2020). Moreover, the Court is unpersuaded by their reasoning for many of the reasons cogently set forth in Judge Douglas' dissent in *Buenrostro-Mendez* which explains that the majority's interpretation risks rendering substantial portions of the statutory scheme superfluous and internally inconsistent. The United States Court of Appeals for the Fourth Circuit recently heard oral argument concerning the applicability to § 1225 to detainees like Petitioner. Unless and until the Fourth Circuit issues a contrary decision, this Court will continue to reject Respondents' arguments.

Respondents insist (1) that the Court lacks jurisdiction over the Petition by virtue of two jurisdiction-stripping provisions of the Immigration and Nationality Act ("INA"), (*Duarte Escobar*, ECF No. 18, at 7–8); (2) that even if the Court has jurisdiction over the Petition, Petitioner's detention is lawful under 8 U.S.C. § 1225's mandatory detention provisions, (*Duarte Escobar*, ECF No. 18, at 8–20); and (3) that Petitioner's constitutional due process rights have not been violated, (*Duarte Escobar*, ECF No. 18, at 20–28).[6] Respondents raise no new arguments that would compel a different outcome.[7]

Because the Court concludes that 8 U.S.C. § 1226(a) entitles Petitioner to a bond hearing, the Court will grant the Petition.

### A.    The Court Has Jurisdiction Over the Petition

As a threshold matter, this Court has jurisdiction to consider the Petition.  Respondents argue that the Court lacks subject-matter jurisdiction over the Petition because two provisions of the INA strip the Court of jurisdiction over the Petition:  8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(g).  (*Duarte Escobar*, ECF No. 18, at 7–8.)  As the Fourth Circuit has affirmed, neither

---

[6] Respondents, in their briefing as incorporated from *Duarte Escobar*, do not argue that Petitioner has failed to exhaust his administrative remedies, and they therefore waive any argument on this point.  The Court notes, however, that even had Respondents raised an exhaustion defense, they would not prevail, because exhausting Petitioner's administrative remedies prior to filing his Petition would be futile.  *See Duarte Escobar*, 807 F. Supp. 3d at 572.

[7] Petitioner indicates that he is detained under § 1226(a) and seeks release from custody or a bond hearing.  (ECF No. 1, at 6–8.)  As explained below, the appropriate remedy here is to grant a bond hearing.  Because the Court grants Petitioner relief on statutory grounds, the Court need not address the remaining arguments.

8 U.S.C. §§ 1252(b)(9)[8] nor 1252(g)[9] divests this Court of jurisdiction under 28 U.S.C. § 2241 to review the Petition. *See Suri v. Trump*, —F.4th—, 2026 WL 2123557, at *13–25 (4th Cir. 2026) (holding "that none of the pertinent INA provisions deprive the district court of habeas jurisdiction" because "claims challenging . . . detention are legally separate from the Government's decision to begin removal proceedings" and "are wholly independent of the removal process"); *see also Duarte Escobar*, 807 F. Supp. 3d at 572–75. The Court has jurisdiction to consider the merits of the Petition and proceeds to the substance of Petitioner's claim.

**B.    Petitioner is Entitled to a Bond Hearing Pursuant to 8 U.S.C. § 1226**

With respect to the substance of Petitioner's claim, he contends that his detention is governed by the discretionary detention provisions of § 1226 rather than the mandatory detention provisions in § 1225(b)(2). (ECF No. 1, at 6.) According to Respondents, Petitioner's detention is lawful under the INA because he was not legally granted entry into the country and is therefore an "applicant for admission," meaning § 1225(b)(2) governs his detention. (*Duarte Escobar*, ECF No. 18, at 8–20.) For the reasons stated by this Court in *Duarte Escobar*, as well as the dozens of other decisions issued by courts in this District on the same issue, this Court concludes that Petitioner's detention is governed by 8 U.S.C. § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures. 807 F. Supp. 3d at 575–81.

It is unclear to the Court how long Petitioner has been present in the United States, but

---

[8] For instance, 8 U.S.C. § 1252(b)(9) does not divest this Court of its habeas jurisdiction because Petitioner does not seek review of a removal order. *Suri*, 2026 WL 2123557, at *18.

[9] 8 U.S.C. § 1252(g) likewise does not divest the Court of its habeas jurisdiction because this case does not involve commencement, adjudication, or execution of any immigration order. *Suri*, 2026 WL 2123557, at *14–16.

Respondents have conceded that there are no material factual differences between this case and

*Duarte Escobar*, and there the petitioner had been present in the United States for many years.

Petitioner is thus not an "applicant for admission" subject to the mandatory detention provisions

of § 1225 but rather falls within the discretionary detention provisions of § 1226(a) governing

aliens who are already in the country. *See Jennings v. Rodriguez*, 583 U.S. 281, 288–90, 303

(2018) (finding that § 1226(a) is the "default rule" governing "aliens already in the country"

whereas § 1225 governs "aliens seeking admission into the country").[10]  For the reasons set out

---

[10] The Court observes that, for decades, "Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 n.6 (BIA 2025).  But on July 8, 2025, "Acting Director of U.S. Immigration and Customs Enforcement, Todd M. Lyons, issued an internal memorandum explaining that the agency had 'revisited its legal position'" by determining that "[the mandatory detention provisions of section 1225] of the Immigration and Nationality Act (INA), rather than [the discretionary detention provisions of section 1226], is the applicable immigration detention authority for all applicants for admission." *Martinez v. Hyde*, 792 F. Supp. 3d. 211, 217–18 (D. Mass. 2025).  The July memorandum characterized, seemingly for the first time, all noncitizens who entered the United States without inspection as doing so "seeking admission," no matter how much time passed between their entrance into the United States and their apprehension by law enforcement.

On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado* in line with Acting Director Lyons' memorandum.  "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Soto v. Soto*, 807 F. Supp. 3d 397, 401 (D.N.J. Oct. 22, 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

The Court owes the BIA no deference in its interpretation of the INA and interprets §§ 1225 and 1226 *de novo. See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395–96 (2024).  Indeed, the United States District Court for the Central District of California issued a nationwide declaratory judgment and vacatur under the Administrative Procedure Act against ICE's internal policy mandating that immigration detainees remain detained without a bond hearing. *Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), *judgment stayed in part*, 5:25-cv-1873, ECF No. 129 (C.D. Cal. Mar. 6, 2025).  In doing so, the *Bautista* court found that *Matter of Yajure Hurtado* cannot be *controlling* law because it relies on a faulty statutory analysis, which *Bautista* rejected. *Id.* at 1106; *see also Duarte Escobar*, 807 F. Supp. 3d at 580.  While the United States Court of Appeals for the Ninth Circuit recently stayed enforcement

in *Duarte Escobar*, the plain text of the INA,[11] Supreme Court precedent, district court decisions around the country, and decades of practice support this conclusion. 807 F. Supp. 3d at 575–81. Petitioner is therefore entitled to a bond hearing under § 1226(a) and its implementing regulations.

### C.     The Proper Remedy for this Violation is to Provide Petitioner with a Bond Hearing During Which Respondents Maintain the Burden of Proof

Although Petitioner first asks for his release from custody, that is not the appropriate remedy here. In their response as incorporated from the briefing in *Duarte Escobar*, Respondents assert that a bond hearing is the only appropriate remedy and that at a bond hearing, Petitioner should bear the burden of establishing whether he is a flight risk or poses a risk of danger. (*Duarte Escobar*, ECF No. 18, at 28–29.) For three reasons, the Court will order Respondents to provide Petitioner with a bond hearing rather than immediate release. But the Court will require Respondents to bear the burden of proof at that bond hearing.

First, ordering a bond hearing allows the Court to tailor its remedy to the specific injury alleged by Petitioner: deprivation of his access to a bond hearing. *Avelar Ramos v. Bondi*, No. 3:26-cv-112 (MHL), 2026 WL 614875, at *5 (E.D. Va. Mar. 4, 2026). Second, providing Petitioner with a bond hearing aligns with the INA's statutory scheme, through which Congress and DHS, in enacting § 1226 and promulgating its implementing regulations, "have determined

---

of the nationwide relief in *Bautista*, *Bautista v. Santacruz*, 5:25-cv-1873, ECF No. 129 (C.D. Cal. Mar. 6, 2025), the Court agrees with the *Bautista* court's finding.

[11] As this Court explained in *Duarte Escobar*, § 1225 requires that an applicant be "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2). The statute's use of active language suggests that an alien must be taking *active* steps towards "seeking admission" to the United States. Presence in the country is not enough. *Duarte Escobar*, 807 F. Supp. 3d at 576. To find otherwise, as Respondents (again) ask this Court to do, would render other provisions of the INA superfluous. *Id.* at 576–77.

that an Immigration Judge is best situated to make a determination about whether an alien is a potential danger to the community or is a flight risk." *Id.* at *6. And third, the circumstances in which district courts within the jurisdiction of the United States Court of Appeals for the Fourth Circuit have ordered immediate release instead of a bond hearing are not present here. *Id.* For example, this Court has neither been "confronted with petitioners who have been detained, released, and re-detained by immigration officials," nor with evidence of Respondents' failure to comply with this Court's orders. *See id.* The Court will therefore order Respondents to provide Petitioner with a bond hearing rather than order his release from custody.

The Court will require Respondents to carry the burden of proof at that bond hearing. As this Court explained in *Avelar Ramos*, given Respondents' "abject denial of [Petitioner's] entitlement to a bond hearing, due process calls for additional safeguards to protect that entitlement." 2026 WL 614875, at *7–8.[12] Requiring Respondents to carry the burden of proof is one such safeguard.

---

[12] In *Avelar Ramos*, this Court distinguished circumstances like the present—where a noncitizen petitioner detained under § 1226 was denied a bond hearing—from those addressed in the Fourth Circuit's decision in *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022). *Avelar Ramos*, 2026 WL 614875, at *7–8. As this Court explained, the *Miranda* court held that placing the burden of proof on a noncitizen to prove that he or she was not a risk of danger or a risk of flight did not violate due process because the noncitizen was afforded *three opportunities* to seek release from detention. *Id.* (citing *Miranda*, 34 F.4th at 358–65).

The present situation, as in *Avelar Ramos*, differs from that at issue in *Miranda* because Petitioner "has been denied access to a bond hearing entirely." *Id.*; *see also Pineda-Medrano v. Bondi*, No. 1:25-cv-01870 (AJT), 2025 WL 3472152, at *3 n.5 (E.D. Va. Dec. 3, 2025) ("[N]owhere in [*Miranda*] did the Fourth Circuit hold—explicitly or implicitly—that the failure to comport with the procedures contemplated in section 1226(a), including the provision of a bond determination hearing, would also satisfy due process.").

Accordingly, the Court will order Respondents to provide Petitioner with a bond hearing during which Respondents will bear the burden of showing whether Petitioner is a danger or a flight risk by clear and convincing evidence.

### IV.  Conclusion

Because § 1226(a) sets for "the default rule" for detaining and removing aliens "already present in the United States," *Jennings*, 583 U.S. at 202, Petitioner's detention is governed by § 1226(a).  Under § 1226(a) and its implementing regulations, he is entitled to a bond hearing before an Immigration Judge at which the government must prove by clear and convincing evidence that he poses a danger to the community or that he is a flight risk if Respondents seek to continue detaining Petitioner.  8 U.S.C. § 1226(a); *Avelar Ramos*, 2026 WL 614875, at *7–8. Unless and until Respondents meet that burden, Petitioner's continued detention is unlawful.

For the reasons articulated above, the Court will grant the Petition (ECF No. 1), in that the Court will order that Petitioner be provided a bond hearing with an Immigration Judge pursuant to 8 U.S.C. § 1226(a).

An appropriate Order shall issue.

Date: 7/31/26
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge

11